UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TRUSTEES OF THE SHEET METAL :
WORKERS INTERNATIONAL :
ASSOCIATION LOCAL NO. 38 INSURANCE :
AND WELFARE FUND, et al., : **OPINION AND ORDER**
         Plaintiffs, :
: 15 CV 5979 (VB)
v. :
:
HALDEAN SHEET METAL FABICATORS, :
INC., FLORENCE HALE, and ROBERT :
HALE, :
         Defendants. :
------------------------------------------------------------x

Briccetti, J.:

    Plaintiffs, Trustees of the Sheet Metal Workers International Association Local No. 38 Insurance and Welfare Fund, Sheet Metal Workers International Association Local No. 38 Profit Sharing Plan, Sheet Metal International Association Local No. 38 Individual Vacation Account Fund, Sheet Metal Workers Local 38 Labor Management Committee and Trust, Sheet Metal Workers Local 38 Craft Training Fund, Sheet Metal Workers National Pension Fund, and Sheet Metal Workers Local 38 Craft Training Building Fund, bring this action against defendants, Haldean Sheet Metal Fabricators, Inc. ("Haldean"), Robert Hale, and Florence Hale, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 et seq. Plaintiffs seek to collect unpaid fringe benefit contributions owed pursuant to a collective bargaining agreement between Sheet Metal Workers International Association Local Union No. 38 ("Local 38") and defendant Haldean.

    Now pending are defendants' motion for summary judgment (Doc. #110) and plaintiffs' cross-motion for summary judgment (Doc. #116). For the reasons set forth below, defendants'

1

motion is GRANTED IN PART and DENIED IN PART.  Plaintiffs' cross-motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185(a), 1132(e).

**BACKGROUND**

The parties have submitted briefs, statements of fact pursuant to Local Civil Rule 56.1, declarations and affidavits ("Aff."), and supporting exhibits, which reflect the following factual background.

I. <u>The Parties</u>

Plaintiffs are trustees of multiemployer fringe benefit funds (the "Funds") established and administered in accordance with the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA").

Haldean is a family owned steel fabrication and installation corporation.  Individual defendant Robert Hale and his late brother-in-law, Peter DeAngelis, incorporated Haldean in 1977.  At an initial shareholders' meeting on June 15, 1977, Robert Hale and Peter DeAngelis adopted bylaws, appointed themselves directors of Haldean, and elected Hale's wife, defendant Florence Hale, as Haldean's President and Secretary, and DeAngelis's wife, Mary DeAngelis, as Haldean's Vice President and Treasurer.

Haldean operated out of 581 North State Road, in Briarcliff Manor, New York.  In approximately 1981, after several years renting the property, Robert Hale and Peter DeAngelis formed North State Associates Partnership and purchased the property.  From that time, Haldean paid rent to North State Associates, with the rent being equivalent to North State Associates's monthly mortgage payment and common condominium charges.

At Haldean, Robert Hale managed sheet metal fabrication and installation, and Peter DeAngelis managed sales, bidding, and client relationships, and was assisted by Florence Hale in managing bill pay, collection, and payroll. When Peter DeAngelis died in 2009, Florence Hale and Brian Mullins, a Haldean employee, took over many of Peter DeAngelis's responsibilities.

Haldean failed to file New York State corporate tax returns between 2009 and 2015. As a result, New York State dissolved Haldean by proclamation in 2012. In 2016, Haldean filed its tax returns and was reinstated.

II.     The Collective Bargaining Agreement

In 1997, Haldean entered into a collective bargaining agreement (the "1998 CBA") with Local 38. The 1998 CBA became effective July 1, 1998. Pursuant to the 1998 CBA, Haldean was required to make fringe benefit contributions to the Funds for each of its Local 38 employees.

The 1998 CBA provided for periodic updates to the union wage scale, and contained an "evergreen" clause, stating:

> This agreement shall become effective on the 1st day of July, 1998, and shall remain in full force and effect until the 30th day of April, 2002, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date.

(R. Hale Aff. Ex. B: 1998 CBA, Art. XIII § 4). Following the 1998 CBA, Haldean was not provided a subsequent CBA, and neither Haldean nor Local 38 issued a notice of reopening, written or otherwise.

Local 38 entered into collective bargaining agreements in 2002, 2012, and 2015 (the "subsequent CBAs"). However, Haldean did not receive or sign the subsequent CBAs.

3

III.       <u>Haldean's Delinquent Fringe Benefit Contributions</u>

Wendy Santucci, an employee of the Funds, was responsible for union employers' remittance of fringe benefit contributions. On a monthly basis, employers provided Santucci a record of employee hours worked. Santucci then created an invoice reflecting benefit contributions owed.

Haldean participated in this process, but in 2009 Haldean fell on hard times – Peter DeAngelis died suddenly, Florence Hale was in poor health, and, according to defendants, business was down. Haldean became delinquent in its benefit contributions, and by 2011 ceased reporting employee hours to Santucci altogether. Santucci nevertheless input estimated hours for Haldean's employees on a monthly basis, crediting their vacation and annuity accounts, which caused fund monies to be released. Santucci testified she credited those accounts in particular because she was aware that workers reviewed them, and would notice any shortfall. Thus, despite Haldean's delinquency, those accounts were paid and up to date for Haldean's employees.

Santucci was also required to keep a record of employers whose benefit contributions were delinquent or unpaid. Santucci provided the Funds' manager, Mark Modzeleski, a list of such employers each month. Modzeleski reviewed the list and forwarded it to Local 38. Richard Pagano replaced Modzeleski in 2014, and he followed the same procedure.

In a number of telephone conversations, Santucci and Florence Hale discussed Haldean's delinquent benefit contributions. Despite her discussions with Florence Hale about Haldean's arrears, Santucci never relayed to Modzeleski or Pagano that Haldean's benefit contributions were unpaid.

Haldean's six year delinquency ultimately was discovered in March 2015. Santucci was supposed to send the National Pension Fund employer hours on a monthly basis, but at that time she instead sent a single submission of Haldean's hours for the years 2009-2015 (the "relevant time frame"). Pagano questioned Santucci, who admitted she had not reported Haldean's failure to make benefit contributions. As a result, the Funds terminated Santucci.

On November 12, 2015, the Funds obtained a consent judgment against Santucci in the amount of $1,682,509.94. Santucci remitted her retirement fund in partial satisfaction of the judgment.

IV. Haldean's Payroll Audit

Although Local 38 typically audits employers every three years, Haldean was not audited between 2003 and 2015. In 2015, after the National Pension Fund advised Pagano there was an issue with Haldean's hours, the accounting firm Novak Francella conducted a payroll audit. Novak Francella's report reflected that for the period January 1, 2009, to June 30, 2015, Haldean owed the Funds $1,682,509.94. Of that amount, $321,689.31 is interest, and, according to defendants, $213,720.72 represents contributions Haldean withheld from its employees' wages but failed to remit to the Funds.

**DISCUSSION**

I. Summary Judgment Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a

reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.  Haldean's Liability for Unpaid Benefit Contributions

The Funds assert, and defendants do not dispute, that Haldean is liable for unpaid benefit contributions for employee hours worked during the relevant time frame.

Accordingly, the Funds' cross-motion for summary judgment as to Haldean's liability for unpaid benefit contributions is granted.[1]

III.  The Hale Defendants' Personal Liability for Unpaid Benefit Contributions

The Funds argue that Robert and Florence Hale (the "Hale defendants") are personally liable for unpaid benefit contributions on two grounds: (i) pursuant to ERISA, the unpaid benefit contributions are "plan assets" for which the Hale defendants may be held liable as fiduciaries; and (ii) the "special circumstances" doctrine permits the imposition of personal liability.

A.  Liability Pursuant to ERISA

The Funds first argue the Hale defendants are personally liable for all unpaid benefit contributions for employee hours worked during the relevant time frame pursuant to their status as fiduciaries of ERISA plan assets. The Hale defendants dispute whether Haldean's unpaid

---

[1] The Funds request that the Court enter judgment against defendants in the amount of $1,360,820.63, plus interest and penalties as permitted by ERISA. Defendants dispute the application of interest and penalties to unpaid benefit contributions. The Funds' request for an entry of judgment is premature, and will not be addressed at this time.

7

benefit contributions properly are considered plan assets, and further dispute whether Robert Hale was a fiduciary of plan assets.

As set forth below, the Court concludes that Haldean's unpaid benefit contributions (except to the extent they were actually withheld from employees' wages but not remitted to the Funds) are not plan assets pursuant to ERISA. The Court further concludes that Florence Hale was a fiduciary of plan assets, but the Court cannot determine on summary judgment whether Robert Hale was a fiduciary of plan assets.

ERISA provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). "In order to establish that a person is personally liable as a fiduciary of the plan, plaintiffs must prove 'both that (1) the unpaid contributions were plan assets and (2) [the individual] exercised a level of control over those assets sufficient to make him a fiduciary.'" Sullivan v. Marble Unique Corp., 2011 WL 5401987, at *10 (E.D.N.Y. Aug. 30, 2011) (quoting In re Halpin, 566 F.3d 286, 289 (2d Cir. 2009)).

1. Haldean's Unpaid Benefit Contributions Are Not Plan Assets

In assessing the first factor, unpaid benefit contributions are not normally held to be assets of a plan, unless the parties to a CBA contract otherwise. See In re Halpin, 566 F.3d at 290–92. The 1998 CBA does not define unpaid benefit contributions as plan assets, but under the subsequent CBAs "employer contributions" become vested plan assets "at the time they become due and owing." The Funds assert Haldean need not have executed subsequent CBAs to be bound by their terms, and as such the subsequent CBAs' definition of plan assets governs the Hale defendants' liability.

An entity can adopt the terms of an unsigned CBA through its actions. See Brown v. C. Volante Corp., 194 F.3d 351, 355–56 (2d Cir. 1999). The Brown court, and other courts in this Circuit, have held the following behaviors established that the defendant employer adopted an unsigned CBA: (i) signing a previous CBA; (ii) submission of remittance reports in accordance with the terms of the CBAs over several years; (iii) submission to audits by the funds; (iv) and payment of union wages. See id.; see also Inter Cty. Glass, Inc. v. Local Union 580 of the Int'l Ass'n. of Bridge Structural and Ornamental Iron Workers, 2007 WL 2908094, at *4 (E.D.N.Y. Sept. 28, 2007); Serv. Emps. Int'l Union, Local 32BJ v. Coby Grand Concourse, LLC, 2006 WL 692000, at * 4 (S.D.N.Y. Mar. 16, 2006).

Unlike the defendant in Brown, which submitted sixty-one remittance reports in accordance with the terms of an unsigned CBA, Haldean submitted only two remittance reports in the relevant time frame, and it is undisputed that the Funds did not audit Haldean between 2003 and July 2015. Further, although the Hale defendants paid employee wages consistent with wage scales in the subsequent CBAs, it is undisputed that wage sheets reflecting increases routinely were issued by Local 38 separate and apart from the subsequent CBAs. The Hale defendants contend they relied on these wage sheets to set employee wages. Thus, it is not clear the Hale defendants' actions evidence intent to be bound by the subsequent CBAs.

Moreover, by virtue of its evergreen clause, the 1998 CBA renewed automatically when it expired on April 30, 2002. The evergreen clause indicates the 1998 CBA will continue in full force and effect unless written notice of reopening is given. It is uncontested that neither Haldean nor Local 38 gave notice to reopen or terminate the 1998 CBA.

The Funds seem to assert the evergreen clause operates to bind Haldean to each subsequent CBA executed by Local 38. Even if the Court were to accept the Funds'

interpretation of the evergreen clause, it would not obviate Local 38's obligation to provide Haldean some form of notice of its intent to terminate or modify the 1998 CBA. Long Island Head Start Child Dev. Servs. v. N.L.R.B., 460 F.3d 254, 259 (2d Cir. 2006) (finding that where no notice of termination was given, negotiation between the parties of a new CBA did not terminate a prior CBA containing an evergreen clause). There is no evidence to suggest Haldean received such notice.

Likewise, the Funds' reliance on Carpenters Health v. Mgmt. Res. Sys. Inc., 837 F.3d 378 (3d Cir. 2016), as authority to bind Haldean to the subsequent CBAs, is misplaced. In that case, the defendant employer was a party to a "me-too" agreement that allowed a multi-employer bargaining group to negotiate on its behalf. Here, there is no evidence Haldean was a party to such a "me-too" agreement. And it is undisputed that Haldean was <u>not</u> a member of the multi-employer bargaining group known as SMACNA, which negotiated on behalf of other employers. Moreover, there is no evidence that Haldean consented to SMACNA's bargaining on its behalf, participated in SMACNA's negotiations with Local 38, or was aware of SMACNA's negotiations with Local 38. There is also no evidence Haldean was a member of any other multi-employer bargaining group.

Therefore, the Court finds the 1998 CBA governs Haldean's relationship with the Funds. See, e.g., The Tile Setters & Tile Finishers Union of N.Y. & N.J. v. Speedwell Design/BFK Enter., LLC, 2009 WL 922021, at *13 (E.D.N.Y. Mar. 31, 2009) (finding plain language of CBA's evergreen clause did not bind employer to Union's successor CBA when employer had no notice of and did not participate in negotiation of successor CBA, did not sign successor CBA, was not a member of the associations that negotiated the successor CBA, and did not

10

receive a copy of the successor CBA).[2] Haldean's unpaid benefit contributions thus are not plan assets for which the Hale defendants may be held liable as ERISA fiduciaries.

The Hale defendants concede that contributions in the amount of $213,720.72 were withheld from Haldean employees' wages but not remitted to the Funds, and therefore constitute plan assets. (Haldean Br. at 14-15). Thus, to the extent the Hale defendants are fiduciaries pursuant to ERISA (as discussed below), they may be held liable for those unremitted contributions.

        2.       The Hale Defendants' Status As ERISA Fiduciaries

Defendants concede Florence Hale is an ERISA fiduciary. Thus, Florence Hale is personally liable for plan assets Haldean failed to remit to the Funds.

Defendants contest Robert Hale's status as an ERISA fiduciary, and the Court concludes that issue cannot be resolved on summary judgment.

ERISA provides that a person is a fiduciary with respect to an ERISA benefit plan to the extent "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). "Congress intended ERISA's definition of fiduciary 'to be broadly construed' . . . [and] functional." LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997).

---

[2]     For similar reasons, the Court finds unavailing the Funds' argument that trust agreements external to the 1998 CBA, and unexecuted by Haldean, are a sufficient basis for concluding unpaid benefit contributions are plan assets. With one exception, the agreements post-date the 1998 CBA. (Funds Br. Exs. 4-7). There is no evidence that Haldean was given notice that the 1998 CBA was amended or modified pursuant to these trust agreements. The Local 38 Labor Management Committee and Trust Agreement (Funds Br. Ex. 3) apparently is from 1998. Neither party makes any representation as to what month it was executed or whether Haldean was ever aware of its existence. Accordingly, the Court is unable to assess its bearing on the 1998 CBA.

In determining whether an individual defendant is liable as a fiduciary of ERISA plan assets, courts analyze how much control the individual exercised over such assets. In making this determination, courts look to several factors, "most significantly, whether a defendant was responsible for authorizing and making payments to an employee benefits plan." <u>Trs. of the Plumbers Local Union No. 1 Welfare Fund, et al. v. Philip Gen. Const.</u>, 2007 WL 3124612, at *5 (E.D.N.Y. Oct. 23, 2007) (internal quotation omitted). Courts in this Circuit have concluded this definition includes individuals who exercise control over a company and fail to make benefit contributions. <u>See</u> <u>LoPresti v. Terwilliger</u>, 126 F.3d at 40 ("Of equal if not more import, though, is that [defendant] had a role in determining which bills to pay, in that he decided which creditors were to be paid out of the Company's general account . . . and when those creditors were to be paid.") (internal quotation omitted); <u>Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg</u>, 2009 WL 3497493, at *4 (E.D.N.Y. Oct. 28, 2009).

The Funds argue Robert Hale was a co-owner and fifty percent shareholder of Haldean, and the signatory on all checks written on Haldean's account, including three checks made payable to the Funds in the relevant time frame. The Funds further argue Robert Hale worked in Haldean's offices every day, whereas Florence Hale was in poor health and regularly worked from home. The Funds contend Robert Hale's familiarity with Haldean's finances is demonstrated by the use of Haldean's assets to repay a loan taken against Robert Hale's annuity plan.

Defendants argue the testimony of Haldean's employees establishes Robert Hale worked almost exclusively in the field on production, whereas Florence Hale was responsible for Haldean's administrative work, including determining which bills to pay and when. This is

12

supported by Wendy Santucci's testimony that she communicated with Florence Hale and Peter DeAngelis regarding Haldean's unpaid benefit contributions, but never spoke to Robert Hale.

Based on the foregoing, the Court concludes that genuine issues of material fact regarding Robert Hale's control over Haldean's assets preclude summary judgment.

B. <u>Liability Pursuant to Special Circumstances</u>

The Funds next argue special circumstances warrant the imposition of personal liability against the Hale defendants.

For the reasons that follow, the Court disagrees.

The Second Circuit has held that "special circumstances beyond an individual's officer status or corporate duties, might warrant the imposition of personal liability for a corporation's ERISA obligations." <u>Sasso v. Cervoni</u>, 985 F.2d 49, 50 (2d Cir. 1993). Special circumstances include (i) acting in concert with a fiduciary to breach a fiduciary obligation; (ii) intermingling personal and corporate assets; (iii) committing fraud; and (iv) where the individual is the corporation or the corporation's alter ego. <u>Id</u>.; see also <u>Trs. of Bldg. Serv. 32B-J Pension, Health & Annuity Funds v. Hudson Serv. Corp.</u>, 871 F. Supp. 631, 638 (S.D.N.Y. 1994).

1. <u>Piercing the Corporate Veil</u>

The Funds seek to hold the Hale defendants personally liable through traditional veil piercing.

To protect employee benefits under ERISA, courts in this Circuit "observe a general federal policy of piercing the corporate veil when necessary." <u>Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding. A.S.</u>, 629 F.3d 282, 288 (2d Cir. 2010). Although federal common law determines whether the corporate veil may be pierced in connection with an ERISA claim, state law may be used as a guide. See <u>Goldberg v. Colonial Metal Spinning & Stamping</u>

Co., 1993 WL 361672, at *4 (S.D.N.Y. Sept. 14, 1993). Under New York law, a party seeking to pierce the corporate veil and hold an individual liable for corporate action must make two showings: "1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 63 (2d Cir. 2001) (internal quotation omitted).

In conducting a veil piercing analysis, courts may consider the following factors to determine whether the first requirement, domination over the corporation, is met:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

William Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991). The veil piercing inquiry is fact intensive, and "disregarding corporate separateness is a remedy that differs with the circumstances of each case." Id. (internal quotation omitted).

To support a finding of domination, the Funds assert Haldean failed to observe the formalities of corporate existence in that it did not hold annual meetings or elections of officers, file tax returns during the relevant time frame, or timely pay payroll taxes. The Funds further assert Haldean's corporate funds were used for personal purposes, as Haldean paid rent to North State Associates, a partnership co-owned by Robert Hale. Robert Hale thus arguably used Haldean assets to build equity in a real estate investment, rather than making benefit

contributions. Haldean also made regular payments to Mass Mutual to repay a loan taken against Robert Hale's annuity.

The Hale defendants assert they did everything they could to keep Haldean afloat, and paid creditors as necessary to keep the business operational. The Hale defendants argue Haldean was a small, closely held corporation for which annual meetings and elections were not necessary. The Hale defendants also state they took no salary or compensation from Haldean during the relevant time frame; to the contrary, they infused personal funds, such as the loan against Robert Hale's annuity, into the business to their personal detriment.

The Funds offer scant evidence sufficient to meet the second prong of the inquiry. The Funds argue Florence Hale offered Wendy Santucci certain benefits, including a Christmas dinner and the use of Florence Hale's house in Florida. Such generosity could suggest ill intent, but it does not necessarily establish that the Hale defendants were deliberately abusing the corporate form to avoid Haldean's ERISA obligations. See, e.g., Burke v. Hamilton Equip. Installers, Inc., 528 F.3d 108, 110 (2d Cir. 2008) (citing as a consideration in veil piercing analysis a lack of evidence that the corporation was formed to avoid ERISA liability); Trs. of the Local 813 Pension Tr. Fund v. Canal Carting, Inc., 2014 WL 843244, at *8 (E.D.N.Y. Mar. 4, 2014).

On this record, a reasonable fact finder could conclude veil piercing is warranted, but the evidence is not sufficient to compel such a finding.

Accordingly, summary judgment is not appropriate on that basis.

    2.    Fraudulent Conduct

The Funds next argue special circumstances are met because the Hale defendants committed fraud.

As set forth below, the Court concludes the evidence is not sufficient to support a finding of fraudulent conduct.

The Second Circuit has prescribed a two-part test to determine whether fraudulent conduct subjects an individual to liability for a corporation's ERISA violations. First, the individual must be a "controlling corporate official." Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo, 35 F.3d 29, 33 (2d Cir. 1994), as amended (Sept. 9, 1994). Second, the conduct must rise to the level of common law fraud. Id. "[T]o prove a fraud claim, [plaintiff] must demonstrate 1) a material false representation or omission of an existing fact, 2) made with knowledge of its falsity, 3) with an intent to defraud, and 4) reasonable reliance, 5) that damages plaintiff[s]." Id. (internal quotation omitted).

The Funds assert the Hale defendants made misrepresentations or omissions sufficient to support a finding of fraudulent conduct, including: the Hale defendants did not tell Haldean's employees that benefit contributions were not being paid; Florence Hale signed waivers of lien falsely indicating Haldean's employees were paid a certain wage plus benefits; Florence Hale obtained letters from the Funds' office stating Haldean was in good standing and used them to get paid for jobs; and Florence Hale caused Haldean employees to be taxed on vacation pay that was not remitted to the Funds.

These alleged misrepresentations and omissions are insufficient to establish common law fraud, as they were made to third parties, and there is no evidence the Funds relied on them. See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998) ("We hold that a plaintiff does not establish the reliance element of fraud for purposes of

ERISA or New York law by showing only that a third party relied on a defendant's false statements.").

Likewise, the Funds' argument that the Hale defendants' conduct amounts to fraudulent concealment is unavailing. To establish a claim of fraudulent concealment, the Funds must show they relied on a misrepresentation or omission. See Catalano v. BMW of N. Am., LLC, 2016 WL 3406125, at *3 (S.D.N.Y. June 16, 2016). Again, there is no evidence the Funds relied on the Hale defendants' misrepresentations to third parties, and in light of Florence Hale's multiple conversations with Wendy Santucci, there is no basis to conclude the Hale defendants concealed their non-payment from the Funds.

3. Alter Ego Liability

Pursuant to the special circumstances doctrine, the same evidence that could support veil piercing could also support the imposition of alter ego liability on the Hale defendants. In Lowen v. Tower Asset Management, the Second Circuit stated it would set aside the corporate form where "where exacting obeisance to the corporate form is inconsistent with ERISA's remedial purposes." 829 F.2d 1209, 122–21 (2d Cir. 1987). In the ERISA context, the alter ego inquiry "generally gives less deference to the corporate form than does the strict *alter ego* doctrine of state law." Id. at 1220. In Lowen, the intermixing of assets among corporations and individuals, a lack of appropriate management formalities, inadequate capitalization, and the domination of the corporation by individual defendants manifested a disregard of the corporate form. Id. at 1221.

Although the Funds have presented sufficient evidence to support a finding of personal liability on an alter ego theory, summary judgment is not appropriate because there are genuine issues of material fact. For instance, the parties should have the opportunity to present evidence

concerning Haldean's use of the proceeds of the loan from Robert Hale's annuity, or Haldean's observance of corporate formalities other than shareholders meetings or elections.

Accordingly, summary judgment that special circumstances warrant the imposition of personal liability on the Hale defendants is not appropriate.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED as to whether Haldean's unpaid benefit contributions are plan assets (except to the extent they were actually withheld from employees' wages but not remitted to the Funds), and DENIED in all other respects.

Plaintiffs' cross-motion for summary judgment is GRANTED as to (i) Haldean's liability for unpaid benefit contributions, and (ii) Florence Hale's status as an ERISA fiduciary. Plaintiffs' cross-motion is DENIED in all other respects.

All counsel are directed to appear at a status conference on December 22, 2017 at 10:30 a.m., at which time the Court will set a trial date and a schedule for pretrial submissions.

By December 21, 2017, the parties shall submit a Joint Pretrial Order in accordance with the Court's Individual Practices.

The Clerk is instructed to terminate the motion. (Doc. #110).

Dated: November 21, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge